LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a jury trial on an indictment which charged in pertinent part the following:
“JERRY LEVERNE TARVIN did knowingly and intentionally damage an occupied building, the property in the possession of Geneva Smith, by starting or maintaining a fire, knowing a person was in the building at that time, to-wit: Geneva Smith, or the circumstances indicated the presence of a person therein a reasonable possibility, in violation of § 13A-7-41 of the Code of Alabama.”
Subsection (b) of § 13A-7-41 denominates the crime charged as “Arson in the first degree” and classifies it as a Class A felony, which by § 13A-5-6(a)(l) is punishable by imprisonment “for life or not more than 99 years or less than 10 years.” The trial court fixed defendant-appellant’s punishment at imprisonment for fifteen years.
Three issues are presented in brief of counsel for appellant. We now consider them in the order presented in the brief.
I.
By the first issue, counsel for appellant contends that the evidence was not sufficient “for support of the conviction.” Although the testimony in the case was largely circumstantial and to a great extent conflicting as to whether defendant took part in the actual commission of the crime charged in the indictment, the testimony as a whole was to the effect that at approximately 3:30 A.M. on April 26, the Camellia Court Apartments in Prichard, Alabama, *753 were engulfed with flames that were commenced by the burning of trash, including paper, in one of the apartments, that the Assistant Fire Chief went to the scene of the fire and observed that the fire had begun in one of the apartments below that of Geneva Smith and that it appeared to have been caused to spread by some accel-erant, i.e., something to support a fire. There was strong evidence that the fire was intentionally set, and the investigation focused on four or more suspects.
The witness Geneva Smith testified that she knew Jerry Tarvin and related the following incident in which “windows were broken out of the vacant apartment below” hers. We quote from her testimony as to the incident as follows:
“A. This happened about three or four weeks at the most, before the fire. It was raining, and I guess it was about 9:00 or 10:00 o’clock at night, and I heard the windows shattering.
So, I looked downstairs; I saw Jerry Tarvin, some more people that I can’t really give you their names, because I don’t know them.
“I didn’t say anything to him; I went back in the house; I called the Police Department; they came out, but by the time they got there, everybody was gone.
“Q. When you saw Jerry Tarvin, after the rocks had been thrown through the window of the apartment below you, did he see you?
“A. I don’t think so, because I could look out my bedroom window, and I could look out this window without being seen looking out of the window.
“Q. I see. But you — at any rate, you as a resident of the apartment above there, called the police;—
“A. Yes,—
“Q. —Is that right?
“A. —I did.”
We quote also some of the testimony of the witness Geneva Smith while being cross-examined by defendant’s attorney:
“Q. Okay. Now, you stated in your testimony that you didn’t have any prior problems with Mr. Tarvin, and you stated that three or four weeks prior to the fire, rocks were thrown through your window?
“A. Not through my window, through the vacant apartment window downstairs.
“Q. And you saw who threw these rocks?
“A. Yes.
“Q. And who threw the rocks?
“A. Jerry Tarvin threw the rocks.
“Q. Do you know why he threw the rocks?
“A. Earlier that day, and I won’t forget the statement he said, ‘I hate apartments; they need to burn them down.’
“Q. Do you know why he threw the rocks?
“A. No, because he wasn’t talking to me.”
What we have quoted above as to this issue is from testimony prior to the time the State rested its case and we think it is sufficient to show that the State had presented a prima facie case against defendant.
We now proceed to discuss the remainder of the testimony from the time the defendant proceeded to present his evidence, including the testimony of the defendant, who took the stand and testified that he was present in a part of the apartment complex at the time of the fire and had previously had some words with Geneva Smith on the night before the fire. In being questioned by State’s attorney as to a statement previously made to him, the defendant testified as follows:
“Q. Okay. Now, you heard — You gave a statement, according to paragraph No. 2 that on the night before the apartment was burned, you and Gary Norman Pick-ens, also known as Star Dog and Ronnie Calvin Jordan — Calvin Ronnie Jordan; is that correct?
“A. Yes, sir.
“Q. And that you got in an argument with Geneva Smith because you were making a lot of noise; is that right?
“A. Yes, sir.
*754 “Q. And you broke out some of the windows of the apartment underneath Geneva; is that what happened?
“A. Yes, sir.
“Q. Okay. Why’d you break those windows out?
“A. I said I was just normally mad, and I just broke both them out with my arms.
“Q. What had you been drinking that night?
“A. Wine.
“Q. Okay. How much?
“A. About a gallon or two.
“Q. You alone or with others?
“A. I was with — well, it was me and Ronnie and Gary, and some more fellows.
“Q. Did you drink that much wine by yourself?
“A. No, with others.”
The testimony of defendant was lengthy, and we will only endeavor to summarize the rest of it by stating that he said that one Gary Norman Pickens, also known as “Star Dog,” borrowed defendant’s lighter while they were in the apartment and after using the lighter to light his cigarette he put the lighter to some papers and trash in the kitchen, saying that he was going to bum the place down, that defendant stomped out the fire, that Star Dog lit the papers three times and that no accelerants were used by anyone. The defendant denied that he realized that “Star Dog” wanted defendant’s lighter to start a fire and not merely to light a cigarette.
That which we have quoted above prior to commencing with the testimony of the defendant was when the State rested its case. Counsel for appellant states in his brief that “at the close of the State’s evidence there was no direct evidence of the Defendant’s guilt of arson.” We conclude that this contention of appellant is not well taken. We are of the opinion also that at the conclusion of the evidence in the case a jury question was presented as to defendant’s guilt.
II.
In support of this issue, which is captioned in appellant’s brief, “WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT’S MOTION FOR A MISTRIAL,” counsel for appellant argues in his brief as follows:
“During the course of the trial the defendant moved to exclude the State’s case and/or for a mistrial based upon the State’s suppression of exculpatory evidence which had been reduced to writing (R-260). The trial court denied his motion (R-264).
“Prior to the trial the Defendant filed a motion to produce (T-4) which specifically requested exculpatory information. The trial court entered a pre-trial order on December 12, 1983 (T-6), which provided in part that the State would produce ’4. Any and all evidence tending to exculpate the guilt of the Defendant.’ “During the course of the trial it became apparent that the State had a written, signed statement made by Calvin Ronnie Jordan (R-229, et seq. R-485, 486) which was exculpatory in that the witness stated that he witnessed the crime and that the defendant was innocent of the charge and that another was the perpetrator.
“In Brady v. Maryland, 373 U.S. 83, S Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that such action constituted a violation of due process under the Fourteenth Amendment to the Constitution of the United States....
“The Defendant submits that the only way to insure that the State would properly produce exculpatory matter would be to disallow any conviction whenever the State has wilfully suppressed exculpatory evidence.
“Such a rule would only insure that the State would comply with the mandate of the Fourteenth Amendment as defined in Brady, supra.
“The rule would place the prosecution on notice that any exculpatory evidence must be produced or the conviction cannot stand. This would not prevent any *755 retrial or in any way deny the State an opportunity to prosecute wrongdoers, nor would it allow wrongdoers to escape punishment because of legal technicalities, as has happened in search and seizure cases. If the Court would strictly apply the rationale of Brady v. Maryland and hold the State to a strict compliance with the Brady rule, the only result would be a greater assurance of a fair trial.
“For the above reasons Defendant submits the trial court was in error in failing to grant his motion for mistrial and his conviction should be reversed.”
The handwritten, signed statement of Calvin Ronnie Jordan as subsequently typed, and in the record as defendant’s exhibit is as follows:

“Statement of

Calvin Ronald O’Neal Jordan made to Special Agent Kenneth Murphy and Fire Marshall Richard Montgomery on 10/28/83 in the Baldwin County Jail,
Bay Minette, AL
“I am 27 years old, separated, unemployed and I am presently serving a three-year-sentence for a conviction of theft 2nd degree. My three year sentence was suspended; I am to serve three months and the rest on parole. “The night of the fire at the Camellia Court Apartments I was with my cousin Gary Norman Pickens, who is also called Star Dog, and Jerry Leveme Tarvin. We had been drinking wine and were pretty drunk. We were walking through the court yard and walked through an empty downstairs apartment underneath where a lady named Geneva lives.
“Gary Pickens lit a cigarette and threw the match down in some paper and trash in the kitchen area of the apartment. Jerry put the fire out and told him not to do that. Star Dog just laughed and lit another match and threw it into the paper which caught fire. Jerry put it out also.
“I told them I was going on home and left and they walked home with me and I went on to bed and they left.
“The next day I found out the apartment had burned. That is all I know about the fire. I didn’t see anyone pour any gas or anything else out in the apartment.
“Calvin R. Jordan
“Signed and sworn to before me this 28th day of October, 1983.
“Kenneth L. Murphy
“Richard Montgomery”
We are of the opinion that the quoted statement of Calvin R. Jordan tended to be exculpatory of defendant and should have been revealed to defendant and his attorney in accordance with the pre-trial order of the trial court on December 12, 1983. Nevertheless, we are not of the opinion that any injury to defendant occurred as a result of the failure of the State to reveal such statement as ordered by the trial judge prior to the commencement of the trial, as the defendant and his attorney had the benefit of what had been stated by Calvin R. Jordan before conclusion of the evidence presented by the State. Defendant had the benefit of the same information contained in the statement of Calvin Ronnie Jordan by the testimony of Calvin Ronnie Jordan as a witness for the defendant during the time that defendant presented the evidence for defendant. Defendant herein was not deprived of any rights to which he was entitled by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, nor to a similar prohibition against denial of due process found in Art. I, Sec. 6, of the Constitution of Alabama, prohibiting deprivation of one’s “life, liberty or property, except by due process of law.” As the defendant had the full benefit of the entire testimony of Calvin Ronnie Jordan before the conclusion of the trial of the case including that part thereof that tended to be exculpatory, we are of the opinion that no error prejudicial to defendant occurred by the failure of the State to comply with the pretrial order which provided that the State would produce “any and all evidence tending to exculpate the guilt of the Defendant.”
*756 III.
By this issue, counsel for appellant raises the question, “WHETHER THE TRIAL COURT ERRED IN CHARGING THE JURY ON COMPLICITY.”
In support of the issue, counsel for appellant argues as follows:
“There was no evidence before the Court of any conspiracy. All the evidence was to the contrary, and it affirmatively appeared that the Defendant intended to prevent the offense. By charging the jury as to complicity, the Court confused the jury and allowed the jury to convict the Defendant as an accomplice when there was no evidence of any conspiracy, agreement or efforts by the Defendant either direct or indirect to cause the fire.”
One of the witnesses who testified on call of the defendant was Willie Clarke, who was called by the nickname “Monk,” who testified that he was present at the time and place of the fire, that he had been sleeping in the apartment next to that of Geneva Smith, that a short while before the fire he heard the defendant and “Star Dog” talking. His testimony was in part as follows:
“Q. Okay. You heard voices, Jerry and Star Dog. What, specifically, was Jerry Tarvin saying?
“A. To Star Dog?
“Q. Yeah.
“A. It was like, uh, they was talking about going somewhere or doing, you know, going somewhere, you know, else. And—
“Q. Going somewhere else?
“A. Yeah. And later on, you know, that when they went inside the apartment, that when I heard, you know, next time I heard them talking they was in the apartment, you know, the apartment below.
“Q. Okay. And how long was that before the fire?
“A. About fifteen or twenty minutes.
“Q. About fifteen or twenty minutes before the fire?
“A. Yes, sir.
“Q. When you heard them talking about where they were going?
“A. No I ain’t say — I don’t know where they — I didn’t hear them say where they were going, but I heard them talking about going somewhere.
“Q. Okay. Were they pretty loud?
“A. Oh yeah, you know, they’d been drinking a little wine. I think.
“Q. Getting boisterous?
“A. Yeah.
“Q. Now, what, if anything, else did you hear Jerry Tarvin say to Star Dog?
“A. I heard Jerry Tarvin — Jerry say man, you must be a cuckoo, you know, fool, put that fire out, you know.
“A. He told Star Dog he must be, you know, he cussed, you know, said you must be a so and so fool, man, put that fire out, you know. And then, you know, he said it, you know, once or twice, but, you know, it wasn’t right behind each other, you know. Later on, he said it again, but he was saying something else right then, Star Dog was saying something then, but I couldn’t understand what he was saying. Then I heard Jerry say man, go ahead and put the fire out and start bull jiving, you know, just put the fire out, put the fire out.
“Q. How many times did you hear Jerry Tarvin say that?
“A. About two or three times.
“Q. Okay. Now, how many minutes was that before the fire?
“A. ’Bout ten or fifteen after that.
“Q. Okay. Now, after those words were, — were stated, did you hear Jerry Tarvin say anything else to anybody that was down there?
“A. No, nothing. Last I heard, Jerry said I’m getting on away, man.
“Q. Okay. Do you testify, and you under oath, to a Court of law—
“A. Yes, sir.
“Q. —that you heard Mr. Tarvin make statements at least twice, and possibly *757 the third time, to Star Dog Pickens, to put the fire out?
“A. Yes, sir.
“Q. Is that right?
“A. Yes, sir.
“Q. Okay. And that happened fifteen minutes before the fire?
“A. Yes, sir.
“Q. Did you see them leave?
“A. No, sir.”
We think it can be seen from the testimony just quoted of defendant’s witness Willie Clark, in connection with all of the other evidence in the case as recited in this opinion, that a question of fact was presented as to whether defendant was acting in complicity with “Star Dog” in aiding or abetting Star Dog in “starting or maintaining” the fire. We are of the opinion that the trial court was not in error in charging the jury on the question of complicity.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
TYSON, J., concurs.
PATTERSON, J., concurs specially with opinion with BOWEN, P.J., and TAYLOR and McMILLAN, JJ., joining.